IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BARBARA MURPHY BROWN,<br>    Appellant,<br><br>v.<br><br>THOMAS P. GORMAN,<br>    Chapter 13 Trustee,<br>    Appellee. | 1:15-CV-01265 (LMB/MSN)<br><br>On Appeal from<br>BK NO. 15-12027-RGM<br>in the United States<br>Bankruptcy Court for the<br>Eastern District of Virginia |

## MEMORANDUM OPINION

In this appeal, debtor Barbara Murphy Brown ("appellant" or "Brown" or "debtor"), proceeding pro se, challenges the bankruptcy court's order granting the Trustee's Motion to Dismiss Brown's Chapter 13 case on the grounds that the bankruptcy case was not filed in good faith and that the amount of the estate's secured debt exceeded the statutory secured debt limit of $1,149,525.00 under 11 U.S.C. § 109(e), thereby rendering Brown ineligible for relief under Chapter 13 of the Bankruptcy Code. Appellant's Opening Br. 3 [Dkt. No. 19], May 12, 2016 ("Brown Br."). Thomas P. Gorman, Chapter 13 Trustee ("Gorman" or "Trustee" or "Appellee") has filed an opposing brief, Br. of the Appellee, Thomas P. Gorman, Trustee [Dkt. No. 20], May 26, 2016 ("Trustee Br."), and the deadline for appellant to file a reply brief expired on June 10, 2016. Order [Dkt. No. 18], Apr. 22, 2016. For the reasons that follow, the bankruptcy court's decision will be affirmed.

## I. BACKGROUND

Represented by bankruptcy counsel Bobbie U. Vardan, Brown filed her Chapter 13 petition on June 11, 2015 in the United States Bankruptcy Court for the Eastern District of Virginia, Brown Br. 6; she filed her bankruptcy Schedules on June 25, 2015 and her proposed Chapter 13 Plan (the "Plan") the next day. Trustee Br. 1. In her initial Schedule A disclosure of real property Brown listed an ownership interest with her husband as tenants by the entirety in her residence on Barbara Lane in Fairfax, Virginia ("the property"), which she valued at $900,000, and against which she reported secured claims amounting to $1.2 million. Id. (citing R.1 at 36). Brown's Schedule D disclosure of secured creditors listed a $1.2 million secured claim owed to HSBC Mortgage ("HSBC"). Id. (citing R.1 at 41). Brown marked that claim as "contingent" and "disputed." Id. Although Brown also listed PHH Mortgage as a secured creditor, she described the amount of its claim as $0 and also marked it "disputed." Id. (citing R.1 at 41). In Section 5A of the Plan, Brown proposed to cure the estimated $162,000 owed to HSBC for mortgage arrearage, id. at 2 (citing R.1 at 56); but in Section 6A she sought rejection of the secured claims of HSBC and PHH Mortgage on the ground that they were based on executory contracts and in Section 7B she sought avoidance of the security interests of those creditors on the grounds of a "TILA [Truth in Lending Act, 15 U.S.C. § 1601 et seq.] rescission." Id. (citing R.1 at 57). Brown's Schedule J budget omitted any monthly payments for rent or mortgage. Id. (citing R.1 at 60). In the Plan, all Brown proposed was to make a $3,000 monthly payment to the Trustee "as a show of good-faith, [which] should only be disbursed after the resolution of the debtor's adversary proceeding yet to be filed," R.2 at 3, 5. That $3,000 bears little relation to the actual mortgage payment required by the Note, which as of June 2015 was apparently $7,514.40 per month. R.1 at 81.

After the initial Meeting of Creditors on August 4, 2015, the Trustee filed a Motion to Dismiss with Prejudice and an Amended Objection to Confirmation of the proposed Plan, primarily arguing that Brown was not eligible for relief under Chapter 13 because her secured debt exceeded the secured debt limit of $1,149,525 set under 11 U.S.C. § 109(e). Trustee Br. 2. The Trustee additionally contended that Brown's Chapter 13 petition was not filed in good faith, as evidenced by the Plan's obvious sole intent of using the automatic stay to prevent foreclosure proceedings while she challenged the validity of the mortgage notes by litigating the same TILA causes of action that her husband had previously and unsuccessfully pursued in state court, rather than using bankruptcy relief as a means of reorganizing her personal finances. Id. (citing R.1 at 71-77).

On September 2, 2015, after the Motion to Dismiss was filed, Brown amended her Schedules A and D by reducing HSBC's secured mortgage claim to $1,078,513.03, which she continued to describe as "contingent," "unliquidated," and "disputed." Id. at 2-3 (citing R.1 at 3-4, 89-91). The new lower principal balance was based on Brown misunderstanding a Notice of Payment Change filed by HSBC on July 20, 2015, which reflected what the principal balance would have been had Brown and her husband adhered to their contractually required mortgage payments up until the date of the Notice. Id. In her opposition to the Trustee's motion, Brown justified the difference between the new lower principal balance of the mortgage claim and the one initially provided by claiming that she was forced to speculate about the balance of her mortgage loan when she filed her initial Schedule D, given that the lender had stopped sending her billing statements around 2010 or 2011. Id. at 3 (citing R.1 at 80-82). Nevertheless, Brown's later representation as to the amount of the secured mortgage claim was obviously not offered in good faith as her bankruptcy counsel had received correspondence from HSBC's counsel more

3

than a month before Brown filed her Chapter 13 petition advising that the payoff on her mortgage loan was $1,528,038.81 as of April 7, 2015. Id. (citing R.3 at 71, 107). That amount consisted of a $1,232,745.11 principal balance on the mortgage note, $215,773.93 in accrued interest, $67,371.46 in escrow advances, and other fees and penalties. Id. (citing R.3 at 71, 107).

The next day, on September 3, 2015, the bankruptcy court held an evidentiary hearing on the motion to dismiss in which Brown admitted that she and her husband took out a mortgage in the amount of $1,265,000 from HSBC on June 27, 2008 and signed a corresponding promissory note. Id. (citing Hr'g Tr. at 44-45, Sept. 3, 2015; R.3 at 103-06). She and her husband made the required monthly payments for 21 months, but ceased making payments in March 2010 when they sent notice to HSBC that they were rescinding the loan. Even though the Browns did not pay any of the remaining loan balance, Brown asserted that the notice of rescission meant that they did not "owe a dime." Id. (citing Hr'g Tr. at 42, 44-46, 55). In response to the bankruptcy court's questioning, Brown confirmed that she had no assets in her bank accounts and that neither she nor her husband were able to raise over a million dollars within the next two months, which the bankruptcy court deemed to be the outer limit of the reasonable time in which a borrower must tender a rescission payment. Id. at 3-4 (citing Hr'g Tr. at 58-59).

The bankruptcy court ruled orally at the conclusion of the September 3, 2015 hearing that Brown must be in a position to refund the unpaid balance of the mortgage loan to the lender for a rescission to be effective because a rescission returns the parties to the same position they were in ab initio. Id. at 4. Accordingly, without the ability to repay the mortgage loan to HSBC, the bankruptcy court found that Brown's attempted rescission was not effective and she remained obligated on the mortgage note. Id. (citing Hr'g Tr. at 72). Moreover, the court found that the amount of the HSBC debt was well over the secured debt limit because no mortgage payments

4

had been made since 2010, which meant that the mortgage arrearage claim plus accrued interest would together be "in the hundreds of thousands of dollars" and would place her over the limit when combined with the unpaid principal balance of the note. Id. (citing Hr'g Tr. at 72-73, 75). Lastly, the bankruptcy court found that Brown did not file her Chapter 13 petition in good faith as her sole purpose in filing was to postpone the collection rights of the mortgage lender. Id. (citing Hr'g Tr. at 77-79). In light of these rulings, on September 21, 2015, the bankruptcy court granted the Trustee's Motion to Dismiss and ordered that Brown's Chapter 13 case be dismissed without prejudice. Id. (citing Hr'g Tr. at 79-81; R.2 at 40-49); In re Brown, 538 B.R. 714, 721 (Bankr. E.D. Va. 2015).[1]

Brown filed a Notice of Appeal of that order on September 30, 2015, and on the same day she also filed a Motion to Reconsider. Trustee Br. 4-5. On October 20, 2015, the bankruptcy court entered an order denying Brown's Motion to Reconsider, stating that it lost jurisdiction over her bankruptcy case when she filed her notice of appeal. Id. at 5.

## II. DISCUSSION

Because pro se filings "must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted), the Court has read Brown's nearly indecipherable brief generously. It appears that Brown primarily challenges the bankruptcy court's order on two grounds: first, that the court incorrectly concluded that she had exceeded the Chapter 13 secured debt limit both because it erroneously calculated her mortgage balance and because she owed nothing to the lender after the Note was rescinded under TILA; and second, that the bankruptcy court erred in finding that

---

[1] The dismissal was without prejudice to allow Brown "the ability to come back and file a Chapter 11" if she could do so in good faith; however, the bankruptcy court declined to convert the Chapter 13 petition before it into one under Chapter 11, instead dismissing it because of the bad faith of the debtor. Hr'g Tr. at 79-81.

5

she filed her Chapter 13 petition in bad faith, even though she admits that "protection against foreclosure while the [r]escission issues were being decided was the primary motivation upon which the proceeding was originally commenced." Brown Br. 9.

### A. Standard of Review

A district court "may affirm, modify, or reverse a bankruptcy court's judgment, order or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. The district court "review[s] the bankruptcy court's legal conclusions de novo and its factual findings for clear error." In re Hartford Sands Inc., 372 F.3d 637, 639 (4th Cir. 2004); see also Fed. R. Bankr. P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous."). "In cases where the issues present mixed questions of law and fact, the Court will apply the clearly erroneous standard to the factual portion of the inquiry and de novo review to the legal conclusions derived from those facts." In re Phinney, 405 B.R. 170, 175 (Bankr. E.D. Va. 2009) (citing Gilbane Bldg. Co. v. Fed. Reserve Bank, 80 F.3d 895, 905 (4th Cir. 1996)).

### B. Mortgage Rescission and Balance Calculation

Brown argues that she rescinded her mortgage loan under TILA when she provided the lender with notice of rescission within the statutory limit of three years. Brown Br. 22. The Trustee responds that without the intention or ability to repay the loan balance, Brown's position is contrary to the clearly established law of the Fourth Circuit, which requires borrowers to "allege or demonstrate they would be able to meet their tender obligation [within a reasonable time] if rescission were ordered" pursuant to TILA. Haas v. Falmouth Fin., LLC, 783 F. Supp. 2d 801, 806 (E.D. Va. 2011); Trustee Br. 6. The bankruptcy court did not err in finding that Brown never effectively rescinded the loan because she ignored her tender obligation to restore

6

the lender to the same position it was in before the transaction. Brown, 538 B.R. at 720.

TILA "gives borrowers the right to rescind certain loans for up to three years after the transaction is consummated" if the lender violates the TILA disclosure requirements.[2] Jesinoski v. Countrywide Home Loans, Inc., 135 S.Ct. 790, 791-92 (2015). The borrower must exercise this right by providing the lender written notice within three years of the transaction of his intent to rescind. Id. at 793. In the Fourth Circuit, "unilateral notification of cancellation does not automatically void the loan contract," Am. Mortgage Network, Inc. v. Shelton, 486 F.3d 815, 821 (4th Cir. 2007), because courts "must not conflate the issue of whether a borrower has exercised her right to rescind with the issue of whether the rescission has, in fact, been completed and the contract voided." Gilbert v. Residential Funding LLC, 678 F.3d 271, 277 (4th Cir. 2012).

To accomplish rescission, rather than merely initiating the process, "[e]ither the creditor must acknowledge[ ] that the right of rescission is available and the parties must unwind the transaction amongst themselves, or the borrower must file a lawsuit so that the court may enforce the right to rescind." Id. (internal quotation marks omitted; alteration in original). The sole principle that Jesinoski clarified was that the three year limitation on notice did not extend to the filing of a lawsuit. 135 S.Ct. at 793. If and when a borrower files suit to complete a rescission, she "must show not only that the TILA mandated disclosures were not made, but also that she has the ability to tender the proceeds of the loan to her creditor in return for the release of the security interest on her property. In other words, while the plaintiff can get out of the loan, she does not get to keep the principal amount of the loan." Parham v. HSBC Mortgage Corp., 826 F. Supp. 2d 906, 911 (E.D. Va. 2011), aff'd sub nom. Parham v. HSBC Mortgage Corp., (USA), 473 F. App'x 244 (4th Cir. 2012). These requirements reflect "the equitable goal of rescission

---

[2] There is no evidence in this record of HSBC violating any of TILA's disclosure requirements.

under TILA[, which] is to restore the parties to the status quo ante." Shelton, 486 F.3d at 820 (internal quotation marks omitted).

Nothing in the record suggests that Brown has the intention or ability to repay HSBC; indeed, Brown testified that neither she nor her husband has the necessary funds to tender the remaining balance of the mortgage loan, nor do they have the ability to raise such funds in the next sixty days, which the court deemed the limit of a reasonable period in which they would be required to tender the rescission amount. Trustee Br. 7-8. The bankruptcy court did not err in concluding that Brown's attempt at rescission did not void the loan and that the rescission amount constituted a secured claim in bankruptcy. Brown, 538 B.R. at 720.

It was also not error for the bankruptcy court to conclude that the mortgage balance exceeded the § 109(e) eligibility limit of $1,149,525.00 for secured claims in Chapter 13 bankruptcy proceedings. Id. at 717. Specifically, the bankruptcy court calculated the principal balance of debtor's variable interest rate loan as $1,217,394.45, using the contractually due principal balance at the time the debtor stopped making payments in March 2010. Id. As the bankruptcy court pointed out, the principal balances represented on two payment change letters, from September 1, 2013 and September 1, 2015, upon which Brown relied to argue that the mortgage balance did not exceed statutory limits, actually reflect what the principal balances would have been had Brown and her husband timely submitted all contractually due mortgage payments up until the respective date. Id. Accordingly, the bankruptcy court accurately calculated the principal balance due as of April 1, 2010 as $1,217,394.45 based on the original loan amount of $1,265,000, which was a 30-year note with a prime interest rate plus a margin of

2.25%,³ and applying the payments that had been made. Id. In addition, the bankruptcy court properly calculated interest accrued on the loan from March 1, 2010 through the petition date as $141,500 based on the minimal rate of 2.25%. Id. In light of these findings, even excluding consideration of accrued interest, late fees and penalties called for in the Note, the principal balance exceeded the statutory limit for secured debts under § 109(e), rendering Brown ineligible for Chapter 13 bankruptcy relief. Accordingly, the bankruptcy court's decision that Brown's petition exceeded the statutory limit for secured claims under Chapter 13 of the Bankruptcy Code was not clearly erroneous.

### C. Good Faith

Lastly, Brown contends that the bankruptcy court erred by finding that she did not file her Chapter 13 petition in good faith and accordingly dismissing it. Brown Br. 18. Pursuant to the Bankruptcy Code, "the court shall confirm a plan if . . . the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). Citing In re Leavitt, 171 F.3d 1219 (9th Cir. 1999), which does not once mention "foreclosure," Brown asserts that "[i]t is established that simple filing of a bankruptcy petition to avoid foreclosure does not constitute bad faith." Id. The law of the Fourth Circuit does not support this conclusion; rather, the essential inquiry is "'whether the filing is fundamentally fair to creditors and, more generally, is . . . fundamentally fair in a manner that complies with the Bankruptcy Code.'" In re Uzaldin, 418 B.R. 166, 173-74 (Bankr. E.D. Va. 2009) (quoting In re Dickenson, 517 B.R. 622, 634 (Bankr.W.D.Va.2014)).

As the bankruptcy court correctly found, Brown's Plan was filed in bad faith because

---

³ Indeed, in calculating this principal balance, the bankruptcy court used calculations favoring Brown by applying an interest rate of 2.25%, which assumed a prime rate of zero, even though the 1 year LIBOR was not zero during that period. Brown, 538 B.R. at 718.

9

"[i]n reality, the debtor simply s[ought] to obtain the benefit of the automatic stay while she litigate[d] or negotiate[d] with the lender." Brown, 538 B.R. at 720. This conclusion is supported by Brown listing one debt, the HSBC mortgage, in her Chapter 13 petition, and by proposing to make insufficient monthly payments of $3,000 to the Trustee, who was to hold these payments until Brown concluded her litigation with HSBC. Id. It was not error for the bankruptcy court to conclude that Brown's Plan did not provide for tender of the appropriate mortgage payments and failed to propose an appropriate 60-month schedule to repay the arrearage and keep up with current mortgage payments. Id.

### III. CONCLUSION

Accordingly, the bankruptcy court's Order granting trustee's Motion to Dismiss will be affirmed by an Order to be issued with this Memorandum Opinion.

Entered this 7th day of July, 2016.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge